**Opinion issued February 9, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00877-CV

————————————

## IN RE CVR ENERGY, INC., CVR PARTNERS, LP, CVR REFINING, LP, GARY-WILLIAMS ENERGY COMPANY, LLC, Relators

---

## Original Proceeding on Petition for Writ of Mandamus

---

## O P I N I O N

This original proceeding concerns named defendants' efforts to designate a former co-defendant as a responsible third party in a wrongful death suit.[1] The plaintiffs nonsuited the former co-defendant—Wynnewood Refining Company, LLC, which is a wholly owned subsidiary of a named defendant—less than sixty

---

[1] The underlying case is *Mann v. CVR Energy, Inc., et al.*, cause number 2013-DCV-209679, pending in the 434th District Court of Fort Bend County, Texas, the Honorable James H. Shoemake, presiding.

days before trial and after the date beyond which their claims against it would be time-barred. The remaining defendants, Relators CVR Energy, Inc., CVR Partners, LP, CVR Refining, LP, and Gary-Williams Energy Company, LLC, (collectively CVR) then filed a motion to designate Wynnewood as a responsible third party, but that motion was denied.

Relators now seek a writ of mandamus to compel the trial court to (1) vacate its October 12, 2015 order denying CVR's motion for leave to designate Wynnewood as a responsible third party and (2) grant CVR's motion for leave to make the designation.

We conditionally grant the writ.

## Background

Russell Mann and Billy Smith were killed in a September 28, 2012 explosion at the Wynnewood refinery. According to the Fourth Amended Petition filed by their wives (the live petition at the time of CVR's motion), the explosion occurred when Mann and Smith were assisting in an effort to "re-start" the pilot light in a large "outdated and archaic" boiler. They were both employed by Wynnewood. Wynnewood is a wholly-owned subsidiary of CVR Refining, which was, at the time of the accident, a wholly-owned subsidiary of CVR Energy, Inc.

According to Plaintiff's petition, the boiler "had to be re-started manually because it was not equipped with a Boiler Management System (BMS)" to permit

2

an operator to re-start it "from a safe and remote site." They were both, therefore, very close to the boiler when it exploded—Smith inches and Mann a few feet away. Furthermore, the boiler was not equipped with "gas-flowing gauges or any device to advise how much gas was entering this chamber." "Wynnewood received several proposals" for a BMS for the boiler but rejected them all. Wynnewood, and later CVR, "had actual knowledge of prior detonations" of the boiler that injured workers. Finally, Plaintiff's petition alleged that Wynnewood was "rife with dangerous conditions and working conditions," resulting in numerous Occupational Safety and Health Administration (OSHA) violations.

The refinery was originally owned by Gary-Williams Energy Co., LLC. In 2011, CVR Refining purchased the refinery from Gary-Williams. Thus, CVR became the premises owner. According to CVR, Wynnewood employed Mann and Smith and, on the day of the explosion, it was Wynnewood employees "who tasked Smith and charged Mann" with their responsibilities.

Plaintiffs allege that CVR committed the following acts of negligence and gross negligence: (1) failed to install a boiler management system (BMS) on the boiler; (2) failed to install boiler management controls on all heating equipment as ordered by OSHA; (3) failed to adequately monitor the dangerous condition of the refinery and its boiler; (4) failed to alleviate hazardous conditions that could cause injury or death; (5) failed to repair hazardous conditions causing injury or death,

3

including the boiler; and (6) failed to comply with OSHA directives to install a BMS system on the boiler.

Plaintiffs' live petition also contains numerous allegations against Wynnewood. According to Plaintiffs, Wynnewood intentionally and willfully committed the following acts that caused the deaths of Smith and Mann: (1) "[r]efused to install a BMS and one-inch gas feed pursuant to a third party engineering report;" (2) "[d]id not document that the equipment complies with recognized and generally accepted good engineering practices;" (3) "[d]id not ensure that written operating procedures addressed the operating limits of the process;" (4) "[d]id not ensure the written operating procedures addressed the consequence of deviation from the safe upper and lower limits of the process;" (5) "[d]id not provide refresher training at least every three (3) years to each employee involved in operating a process;" (6) "[d]id not establish and implement written procedures to maintain the on-going mechanical integrity of process equipment;" and (7) "[d]id not establish and implement written procedures to manage changes to process chemicals, technology, equipment, procedures and changes to facilities that affect a covered process."

Plaintiffs further alleged that Wynnewood was cited by OSHA with five violations for its actions causing the explosion. Because of Wynnewood's past investigation, fines, internal investigations, and investigations by third parties,

4

Plaintiffs assert that Wynnewood "had knowledge" that an explosion was "substantially likely" to occur. According to Plaintiffs' live petition, Wynnewood was not entitled to immunity from liability under the Oklahoma worker's compensation statute because Mann and Smith were injured as a result of Wynnewood's willful and intentional conduct.

Plaintiffs served Rule 194 requests for disclosure on CVR while Wynnewood was still a named defendant. Rule 194 states that a party may obtain disclosure of identifying information for any person who may be designated as "a responsible third party." *See* TEX. R. CIV. P. 194.1, 194.2(l). When CVR responded to Plaintiffs' requests for disclosure on potential responsible third parties in December 2013, it did not list co-defendant Wynnewood in its response.

Wynnewood and CVR remained as defendants through four amended petitions, but, in April 2015, approximately 20 months after suit was filed and 55 days before trial, Plaintiffs filed a notice of nonsuit of Wynnewood and deleted it from their Fourth Amended Original Petition. The date of nonsuit was beyond the limitations period for a wrongful death claim against Wynnewood (except for claims by Smith's young son). Despite nonsuiting their claims against Wynnewood, Plaintiffs continued to allege Wynnewood's intentional conduct in the body of their amended petition.

Twenty-six days after the notice of nonsuit, and 29 days before the then-scheduled trial, CVR filed a motion for leave to designate Wynnewood as a responsible third party.[2] Plaintiffs objected to this motion, asserting limitations had run on their claims against Wynnewood and the motion was untimely. The trial court denied CVR's motion.

## Issue Presented

CVR contends the trial court abused its discretion by denying its motion for leave to designate Wynnewood as a responsible third party because (1) Wynnewood had been an active defendant in the case for more than 19 months, (2) Plaintiffs nonsuited Wynnewood 55 days before the trial setting, which was five months before the subsequent trial date,[3] (3) CVR moved to designate Wynnewood as a responsible third party less than 30 days after Plaintiffs' nonsuit, and (4) the evidence regarding Wynnewood's responsibility for the accident is inseparable from Plaintiffs' allegations against CVR. CVR asserts that it does not have an adequate remedy by appeal for this abuse of discretion.

---

[2]  CVR simultaneously amended its response to the request for Rule 194 disclosure and designated Wynnewood as a responsible third party.

[3]  This Court granted CVR's emergency motion to stay the underlying proceeding and trial setting pending resolution of this petition for writ of mandamus. *See* TEX. R. APP. P. 52.10.

**Standard for Granting Mandamus Relief**

To be entitled to mandamus relief, a petitioner must show both that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004). Generally, appellate courts will hold that a trial court has abused its discretion if its actions were either "without reference to any guiding rules and principles" or "arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled." *In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 405 (Tex. App.—El Paso 2010, orig. proceeding) (citing *Prudential,* 148 S.W.3d at 135). A trial court's clear failure to analyze or apply the law correctly is an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

**Abuse of Discretion**

**A.    Overview of Proportionate Responsibility Statute**

Chapter 33 of the Civil Practice and Remedies Code sets out the Texas proportionate responsibility law. TEX. CIV. PRAC. & REM. CODE ANN. § 33.001– 33.017 (West 2015). These statutes allow a tort defendant to designate as a responsible third party a person who "is alleged to have caused in any way the harm for which the plaintiff seeks damages." *See Jay Miller & Sundown, Inc. v.*

*Camp Dresser & McKee Inc.*, 381 S.W.3d 635, 638–39 (Tex. App.—San Antonio 2012, no pet.) (referring to predecessor to Subsection 33.004).

There are limitations to a defendant's ability to designate responsible third parties under Subsection 33.004. These limitations add "procedural safeguard[s]" that prevent a defendant from undercutting "the plaintiff's case by belatedly pointing its finger at a time-barred responsible third-party against whom the plaintiff has no possibility of recovery." *Withers v. Schneider Nat'l Carriers, Inc.*, 13 F. Supp. 3d 686, 689 (E.D. Tex. 2014). The first statutory limitation is that a defendant may not designate a responsible third party within 60 days of trial unless the court finds good cause. TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a). The second is that a defendant may be precluded from designating a responsible third party if it had an obligation to disclose the person earlier and did not do so and the statute of limitations has run on the plaintiff's claim against the late-disclosed party:

> A defendant may not designate a person as a responsible third party with respect to a claimant's cause of action after the applicable limitations period on the cause of action has expired with respect to the responsible third party if the defendant has failed to comply with its obligations, if any, to timely disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(d).

These timing limitations are part of a "statutory balance" created by the Legislature that seeks to address a defendant's interest in identifying nonparties who may have some culpability while recognizing that a plaintiff has time limitations on pursuing its claims against parties not already included in its suit. *See Withers*, 13 F. Supp. 3d at 689.

Plaintiffs contend that, under the statute's plain meaning, the trial court correctly denied CVR's motion to designate Wynnewood as a responsible third party because CVR did not comply with either of these two time limitations, i.e., it attempted to designate Wynnewood within 60 days of trial and after Plaintiffs' statute of limitations against Wynnewood had expired.[4] Plaintiffs contend that Subsection 33.004(d) requires the trial court to deny a motion seeking to designate a responsible third party made after limitations have run even if the party was previously a defendant in the case. According to Plaintiffs, the proportionate responsibility statute adopts a "bright-line, per se rule" that a defendant may not designate a responsible third party after a plaintiff's claims against that party are barred by limitations.

---

[4] No one disputes that the two-year Oklahoma statute of limitations ran on September 28, 2014, at least as to claims the adult plaintiffs could assert against Wynnewood.

But Plaintiffs' reading of the statute ignores the limiting clause included at the end of Subsection (d). It states that a party may not designate responsible third parties after limitations have run "if the defendant has failed to comply with its obligations, if any, to timely disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(d). Thus, in addressing the extent to which Subsection (d) might prohibit CVR's attempted designation, we must consider whether CVR failed to comply with an existing discovery obligation to disclose Wynnewood as a responsible third party.

CVR asserts that it did not. According to CVR, it owed no obligation to disclose Wynnewood, under Rule 194.2(l) as a party "who may be designated as a responsible third party," while Wynnewood was a named party defendant.

## B. Rule 194.2's Disclosure Obligation

Rule 194.2 of the Texas Rules of Civil Procedure obligates a defendant, upon a request from the plaintiff, to disclose, among other things, its defensive legal theories, any potential parties, any witnesses with "knowledge of relevant facts," as well as "any person who may be designated as a responsible third party." TEX. R. CIV. P. 194.2. The response must be complete, "based on all information reasonably available" at the time. TEX. R. CIV. P. 193.1. The scope of the defendant's response is, to a large extent, shaped by the allegations contained in

10

the plaintiff's live pleading. *See generally* TEX. R. CIV. P. 194.2(e) (requiring disclosure of identifying information for people "having knowledge of relevant facts"); *Frazin v. Hanley*, 130 S.W.3d 373, 377–78 (Tex. App.—Dallas 2004, no pet.) (reversing strike of late-disclosed expert in response to new counterclaim filed after expert deadline because "her obligation to disclose defense witnesses did not even arise until appellees filed their counterclaim against her"). If the plaintiff's allegations change, and if those changes prompt a change in the defense strategy, then the defendant must supplement its disclosures if the change causes its prior response to now be "incomplete." TEX. R. CIV. P. 193.5(a) ("If a party learns that the party's response to written discovery . . . is no longer complete and correct, the party must amend or supplement the response."). There is no duty to supplement, however, if the additional information "has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses." TEX. R. CIV. P. 193.5(a)(2).

When CVR responded to the requests for disclosure, Plaintiffs were suing Wynnewood as a defendant, asserting claims against it, and seeking to hold it legally responsible for their damages. At that time, CVR had no obligation to disclose Wynnewood as a potentially responsible party; it was already a party whose conduct would be considered by the jury in the jury charge. The purpose of disclosing responsible third parties and adding them to the jury charge is

11

inapplicable when the entity is already a party and, thus, already going to be in the jury charge. It was not until Plaintiffs nonsuited Wynnewood that CVR had a duty to "reasonably promptly" supplement its disclosures if necessary to respond to this change in Plaintiffs' strategy, which it sought to do. *See* TEX. R. CIV. P. 193.5(b).

## C.     The Statutory Definition of "Responsible Third Party"

The proportionate responsibility statute supports our holding that Rules 193.5(b) and 194.2(l) did not require CVR to designate Wynnewood as a responsible third party until after Plaintiffs nonsuited their claims against it. The interpretation of a statute presents a question of law that we must review de novo, giving effect to the Legislature's intent by looking first at the words of the statute. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008); *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We begin with the text because it "is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."[5] *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *see also Fresh Coat, Inc. v. K–2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010) ("Our 'ultimate purpose' when construing

---

[5]     When a statute's language is clear and unambiguous, we generally do not apply rules of construction or extrinsic aids, such as legislative history, to construe the statutory language. *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) (citing *Tex. Lottery Comm'n v. First State Bank*, 325 S.W.3d 628, 637 (Tex. 2010)).

statutes is 'to discover the Legislature's intent.' Presuming that lawmakers intended what they enacted, we begin with the statute's text, relying whenever possible on the plain meaning of the words chosen.") (citations omitted). This text-first methodology applies to unambiguous text unless enforcement of the plain language would produce absurd results. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We may not add language that is not "implicitly contained" in the statute's language. *Lee v. City of Houston*, 807 S.W.2d 290, 294–95 (Tex. 1991) ("A court may not . . . add words that are not implicitly contained in the language of the statute."); *Villarreal v. Wells Fargo Brokerage Servs., LLC*, 315 S.W.3d 109, 122 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (stating court "may not add language that is not implicitly contained in the language of the statute").

The text of the current version of the responsible-third-party statute does not address whether a person may simultaneously be a defendant and a responsible third party. The current definition of a "responsible third party" broadly reads:

> [A]ny person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(6) (West 2015) (including one limitation on definition not applicable here). To address this issue, "[w]e begin by

reviewing dictionary definitions of" the phrase "third party." *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) (plurality opinion). Dictionaries demonstrate that the common understanding of the phrase "third party" is a person who is not a named party to the litigation. BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "third party" as "person who is not a party to a lawsuit . . . but who is usu. somehow implicated in it; someone other than the principal parties"); WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1507 (5th ed. 2014) (defining "third party" as person "in a case or matter other than the principals"); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1300 (11th ed. 2003) (defining "third party" as "a person other than the principals"); GARNER'S DICTIONARY OF LEGAL USAGE 893 (3d ed. 2011) (stating that verb phrase "they were third-partied" means "to bring into litigation as a third-party defendant"); *see generally In re Ford Motor Co.*, 442 S.W.3d 265, 271 (Tex. 2014) (distinguishing plaintiffs, defendants, and third parties); *id.* at 294 (Boyd, J., dissenting) (same).

We presume that the Legislature adopts the common meaning of a word unless the Legislature provides a different definition or the language clearly indicates otherwise. *See Ford Motor*, 442 S.W.3d at 271–72 (requiring "a high level of linguistic clarity from the Legislature that it intends its statutory definition to depart markedly from the ordinary meaning" of term and examining whether statutory definition "clearly signal[s] a departure from ordinary usage"); *City of*

14

*Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (in absence of legislative definition or use of technical term, courts "construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context or such a construction leads to absurd results"). The ordinary meaning of the phrase "third party" supports CVR's interpretation, while a definition of the phrase "third party" that includes co-defendants "is contrary to the ordinary meaning" of the phrase. *See Ford Motor*, 442 S.W.3d at 271 (construing word "plaintiff").

These common distinctions presumably informed the Texas Supreme Court when it declared, "Chapter 33 provides, among other things, that a defendant in such an action may seek to designate a person, *who has not been sued by a claimant*, as a responsible third party." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 865 (Tex. 2009) (emphasis added) (describing third party in case governed by current definition of "responsible third party"); *see also Jay Miller*, 381 S.W.3d at 638–39 (stating, in case governed by current definition of "responsible third party," that statute "allows a tort defendant to designate as a responsible third party a person who has not been sued by the plaintiff, but who is alleged to have caused in any way the harm for which the plaintiff seeks damages"); *AAMCO Transmissions, Inc. v. Bova*, No. 01–14–00974–CV, 2016 WL 191927, at *4 (Tex. App.—Houston [1st Dist.] Jan. 14, 2016, no pet. h.)

(noting that defendants remaining after nonsuit of other defendants may designate newly omitted defendants as responsible third parties); *Spencer v. BMW of N. Am., LLC*, No. 5:14–CV–869–DAE, 2015 WL 1529773, at *2 (W.D. Tex. Apr. 2, 2015) ("The statute permits a trier of fact, when apportioning liability, to consider the relative fault of the defendants as compared to other responsible third parties that are not party to the suit."). While these cases did not address the issue before us and therefore are not binding here, they demonstrate a generally accepted understanding of the phrase "third party" to mean a party not already in the suit, which likewise is consistent with common dictionary definitions of the phrase.

As part of construing a term or phrase, we consider the context of the entire statute—the surrounding words or the "lexical environment." *See Ford Motor*, 442 S.W.3d at 271–73 (looking beyond meaning of term "plaintiff" to its context and stating that "context is essential to textual analysis" because "'[l]anguage cannot be interpreted apart from context'"); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW; THE INTERPRETATION OF LEGAL TEXTS 70 (2012) (ordinary meaning applies unless there is "reason to think otherwise, which ordinarily comes from context"); *id.* at 167 (stating that whole-text canon requires courts "to consider the entire text, in view of its structure and the physical and logical relation of its many parts" and that "[c]ontext is a primary determinant of meaning"). As a plurality of the Texas Supreme Court recently explained:

While we must consider the specific statutory language at issue, we must do so while looking to the statute as a whole, rather than as "isolated provisions." We "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." We thus begin our analysis with the statute's words and then consider the apparent meaning of those words within their context.

*Jaster*, 438 S.W.3d at 562 (citations omitted). "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *Ford Motor*, 442 S.W.3d at 273. More precisely, courts depart from the common meaning only when the context of the entire statute provides "a high level of linguistic clarity" that the common definition should not be used.[6] *Id.* at 272.

---

[6]   A plurality of the United States Supreme Court has stated the rule somewhat differently:

> Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but also by] the specific context in which that language is used, and the broader context of the statute as a whole." Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things.

*Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015) (citations omitted). The dissent in *Yates* also recognized this rule:

> I agree with the plurality (really, who does not?) that context matters in interpreting statutes. We do not "construe the meaning of statutory terms in a vacuum." Rather, we interpret particular words "in their context and with a view to their place in the overall statutory scheme." And sometimes that means, as the plurality says, that the dictionary definition of a disputed term cannot control.

Chapter 33 addresses proportionate responsibility and how the proportioning of that responsibility impacts the amount of recovery available to a plaintiff from the named parties. Subsection 33.003(a) distinguishes a defendant from a responsible third party and permits the jury to allocate some portion of the 100% of total responsibility to both. It states that the factfinder "shall determine the percentage of responsibility . . . for . . . (1) each claimant; (2) each defendant; (3) each settling person; and (4) each responsible third party who has been designated under Section 33.004." TEX. CIV. PRAC. & REM. CODE ANN. § 33.003. We presume that the proportionate responsibility statute maintains this distinction throughout all its provisions. *See Horseshoe Bay Resort, Ltd. v. CRVI CDP Portfolio, LLC*, 415 S.W.3d 370, 384 n.7 (Tex. App.—Eastland 2013, no pet.) (discussing presumption of consistent usage and citing SCALIA & GARNER, READING LAW at 170 ("A word or phrase is presumed to bear the same meaning throughout a text . . . .")). This context—an explicit reference to a third party that is consistent with the ordinary meaning of the term—informs the disclosure requirements that applied to CVR in this case.

Plaintiffs rely on the history of the proportionate responsibility statute to support their argument that a defendant cannot designate a responsible third party after limitations have expired. The earlier version of the statute, enacted in 1995

135 S. Ct. at 1092 (Kagan, J., dissenting).

18

and found in an older version of Subsection 33.011, narrowly defined a "responsible third party" as follows:

[A]ny person to whom all of the following apply:

(i)    the court in which the action was filed could exercise jurisdiction over the person;

(ii)   the person could have been, but was not, sued by the claimant; and

(iii)  the person is or may be liable to the plaintiff for all or a part of the damages claimed against the named defendant or defendants.

Act of September 1, 1995, 74th Leg., R.S., Ch. 136, § 1 1995 Tex. Gen. Laws 971, 973 (adding earlier version of Section 33.011); *see also id.* (adding earlier version of Subsection 33.004(a), which stated that "a defendant may seek to join a responsible third party who has not been sued by the claimant.").

The definition was entirely rewritten in 2003 and it "substantially broadened the meaning of the term 'responsible third party' to eliminate . . . restrictions," "such as a [past] requirement for personal jurisdiction and a potential for liability

to the claimant."[7] *Galbraith*, 290 S.W.3d at 868 n.6. Rather than operating as a limitation, the amended definition expanded the responsible–third–party defense.[8]

We are not persuaded that the deletion of the phrase "person . . . [who] was not [] sued by the claimant" from the 2003 definition should be interpreted to mean that a responsible third party, thereafter, includes parties who are already named as defendants for three reasons. First, as we have already discussed, the plain meaning of the phrase "third party" means a person who is not a named litigant with claims asserted directly by or against it and whose responsibility is already a matter for the jury's consideration. Second, other parts of the statute—the linguistic context—demonstrate a consistent understanding by distinguishing a responsible third party from a defendant. Third, to the extent we might consider it, the history of the amendments does not clearly indicate a different meaning.

Through a 2003 amendment, the proportionate responsibility statute was broadened to allow a jury to apportion responsibility to any non-party[9] regardless

---

[7]     Similarly, Section 33.004 was entirely rewritten and no longer explicitly indicates that a responsible third party subject to joinder is one who has not been sued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004.

[8]     As a result of the new definition, "the jury should allocate responsibility among all persons who are responsible for the claimant's injury, regardless of whether they are subject to the court's jurisdiction or whether there is some other impediment to the imposition of liability on them, such as a statutory immunity." *Galbraith*, 290 S.W.3d at 868 n.6 (quoting 19 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 291.03[2][b][i] at 291–24.1 (2009)).

20

of whether the nonparty has immunity, limitations defenses or other legal defenses or are even unknown criminals. *See Galbraith*, 290 S.W.3d at 868–69; *In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 58, n.5, 60 n.6 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding); *Sun Dev., L.P. v. Hughes*, No. 09-12-00524-CV, 2014 WL 4755467, at *13 (Tex. App.—Beaumont Sept. 25, 2014, pet. filed) (mem.op.).

A comparison of the text of the 2003 amendment with the 1995 version demonstrates that the 2003 amendment's effect is to broaden the universe of parties submitted in the jury charge and assigned a percentage of responsibility. Plaintiffs' interpretation would deny CVR the right to have Wynnewood assigned its applicable percentage only because Plaintiffs altered their strategy and nonsuited the entity. A result more compatible with the broadening of potentially responsible third parties would be one that provided CVR recourse to ensure that the jury will be able to assign a percentage to Wynnewood.

Finally, we note that the Legislature did not simply delete the phrase "person . . . [who] was not [ ] sued by the claimant" from the definition. Rather, the Legislature completely rewrote the definition to focus, not on whether the plaintiff

---

[9]    A seller eligible for indemnity in a products liability action is exempted from the provision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(6) (West 2015).

could have sued the third party but, instead, on whether that third party might have some responsibility that should not be borne by the litigating, named defendant.

Under these circumstances, we cannot conclude there is "a high level of linguistic clarity" that the Legislature intended to depart from the common meaning of "third party." Instead, we follow the straightforward construction that "third party" means a party that is not otherwise a party to the litigation.

## D.    Whether the Designation was Timely

Plaintiffs object that CVR did not timely move to designate Wynnewood under Subsections 33.004(a) and (d). Subsection (a) requires a defendant to file a motion for leave to designate responsible third parties "on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date." TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a). When CVR filed its motion for leave 28 days before the trial date, it asserted that it had good cause because Wynnewood was still a named defendant at the 60-day deadline, and thus, CVR was not required to designate Wynnewood as a third-party at that time. We agree. Plaintiffs nonsuited Wynnewood within the 60-day pre-trial period. CVR amended its disclosure responses and moved to designate Wynnewood as a "responsible third party" within 30 days of the nonsuit. This meets the requirement that the supplementation occur "reasonably promptly." TEX. R. CIV. P. 193.5(b). It

22

further demonstrates "good cause" for seeking to designate within the 60-day pre-trial period.

Subsection (d) prohibits a defendant from designating a responsible third party after the claimant's applicable limitations period has expired *if* the defendant failed to timely disclose the third party under Rule 194.2(l).[10] TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(d). We conclude that Subsection (d) does not make CVR's motion untimely. A defendant has no obligation to designate a co-defendant as a responsible third party in its disclosure. Plaintiffs were well aware of Wynnewood's potential share of responsibility for their damages; indeed, they named Wynnewood as a defendant and asserted claims directly against it in multiple petitions in the case. Further, Plaintiffs voluntarily nonsuited Wynnewood after the date on which their limitations period expired. The combination of lack of disclosure and post-limitations period designation do not offend Subsection (d) in this context.

**E.     Whether CVR alleged Sufficient Facts in its Motion to Warrant Relief**

Plaintiffs' final argument that the trial court's denial of CVR's motion for leave to designate Wynnewood as a responsible third party was not error is that CVR did not allege sufficient facts concerning Wynnewood's responsibility.

---

[10]     Subsection (l) requires disclosure of "the name, address, and telephone number of any person who may be designated as a responsible third party." TEX. R. CIV. P. 194.2(l).

23

Subsection 33.004(g)(1) states that leave to designate shall be granted unless the opposing party establishes, through a timely objection, that "the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(g)(1). The applicable Rule of Civil Procedure is Rule 47, which is our "notice" pleading rule. *See In re Greyhound Lines*, No. 05–13–01646–CV, 2014 WL 1022329, at \*2 (Tex. App.—Dallas Feb. 21, 2014, orig. proceeding) (mem. op.) ("The standard for designating a potentially responsible third party is notice pleading under the Texas Rules of Civil Procedure."); *see also* TEX. R. CIV. P. 47(a) (requiring "a short statement of the cause of action sufficient to give fair notice of the claim involved").

Under the notice-pleading standard, fair notice is achieved "if the opposing party can ascertain from the pleading the nature and basic issues of the controversy, and what type of evidence might be relevant." *Greyhound Lines*, 2014 WL 1022329, at \*2. A trial court may not review the truth of the allegations or consider the strength of the defendant's evidence. *Unitec*, 178 S.W.3d at 62.

CVR satisfied this low threshold. Its motion for leave to designate Wynnewood quoted from Plaintiffs' own allegations against Wynnewood. It also alleged that, if any entity or persons were negligent in a manner that proximately caused Plaintiffs' injuries, it was [Wynnewood] and its employees, who were

responsible for "the calculations made, instructions given, steps taken and means employed to light the steam boiler." CVR added that "if this case is submitted to a jury at all, [Wynnewood] should be included in the initial liability question because the story of the accident itself—what happened—cannot be told without reference to [Wynnewood]." Finally, we note that the allegations of Wynnewood's responsibility were well-known to Plaintiffs because the 15 page incident report faulted Wynnewood, its employees, procedures, and inadequate training for the explosion and Plaintiffs themselves continued to include allegations in their amended petition of Wynnewood's allegedly intentional misconduct. We hold that CVR provided sufficient notice to Plaintiffs of Wynnewood's alleged wrongdoing.

Because CVR complied with all statutory requirements, the trial court abused its discretion in denying CVR's motion for leave to designate Wynnewood as a responsible third party.

## Adequate Remedy by Appeal

We must next decide if CVR has an adequate remedy by appeal. Mandamus will not issue "when the law provides another plain, adequate, and complete remedy." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding) (quoting *Prudential*, 148 S.W.3d at 135–36). *Prudential* provides that the requirement of an "adequate" remedy on appeal is not subject to simple categories or bright-line rules and, instead, "is simply a proxy for

25

the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts." 148 S.W.3d at 136–37. The test "is practical and prudential." *Id.* at 136.

A complete analysis of the adequacy of appellate remedies requires consideration of the degree to which "important substantive and procedural rights" are subject to "impairment or loss." *Id.* While mandamus review of "incidental, interlocutory rulings" which are "unimportant . . . to the ultimate disposition of the case at hand [or] the uniform development of the law," would distract the appellate courts and add expense and delay to the process, mandamus review of "significant rulings in exceptional cases" could prove essential. *Id.* Review might be necessary

> to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring reversal of improperly conducted proceedings.

*Id.* Thus, courts should consider "the impact on the legal system" in determining whether mandamus relief is appropriate. *Id.* at 137.

An appellate remedy is "adequate" when the "benefits to mandamus review are outweighed by the detriments." *Id.* at 136. Further, additional expense, by itself, does not warrant granting mandamus relief. *See id.* at 136. Nonetheless, when the error is "clear enough, and correction simple enough," mandamus review may still be appropriate. *Id.* at 137.

Courts of appeals that have addressed the adequacy of the remedy by appeal in Chapter 33 cases have reached different conclusions, but they repeatedly refer to the *Prudential* maxim that the decision "depends heavily upon the circumstances presented." *In re Investment Capital Corp.*, No. 14–09–00105–CV, 2009 WL 310899, at *2 (Tex. App.—Houston [14th Dist.] Feb. 4, 2009, orig. proceeding) (citing *Prudential* regarding circumstances justifying mandamus relief); *see In re Wilkerson*, No. 14–08–00376–CV, 2008 WL 2777418, at *2 (Tex. App.—Houston [14th Dist.] June 6, 2008, orig. proceeding) (same).

The courts holding that the appellate remedy was adequate reasoned that a lack of exceptional circumstances in those cases caused the detriments of mandamus review to outweigh the benefits. *See Unitec*, 178 S.W.3d at 64–65; *In re Martin*, 147 S.W.3d 453, 459–60 (Tex. App.—Beaumont 2004, orig. proceeding); *In re SDI Indus., Inc.*, No. 13–09–00128–CV, 2009 WL 781562, at *1 (Tex. App.—Corpus Christi March 23, 2009, orig. proceeding); *In re Caterpillar Inc.*, No. 04–09–00796–CV, 2009 WL 5062324, at *1 (Tex. App.—San Antonio Dec. 23, 2009, orig. proceeding); *Investment Capital*, 2009 WL 310899, at *2; *Wilkerson*, 2008 WL 2777418, at *2; *In re Scoggins Constr. Co. Inc.*, No. 13–08–00548–CV, 2008 WL 4595202, at *1 (Tex. App.—Corpus Christi Oct. 15, 2008, orig. proceeding); *In re Helm*, No. 13–07–00344–CV, 2007 WL 1584177, at *1 (Tex. App.—Corpus Christi June 1, 2007, orig. proceeding).

The courts reaching the opposite conclusion have based their decisions on the following considerations:

(1)      denial of the right to designate responsible third parties would "skew the proceedings, potentially affect the outcome of the litigation, and compromise the presentation of [the relator's] defense in ways unlikely to be apparent in the appellate record";[11]

(2)      there would be a substantial waste of time and money to proceed to trial without error correction;[12] and

(3)      review would allow appellate courts to offer "needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments."[13]

Because the issue of the adequacy of the remedy by appeal "is practical and prudential," "depends heavily on the circumstances," and is determined by a balancing test, this split is not surprising. *See Prudential*, 148 S.W.3d at 137. Each accumulation of circumstances in the cases presented for mandamus review presents a different balance of factors. For example, the Fourteenth Court of Appeals has found that appellate remedy would be inadequate in a case with

---

[11]      *Brokers Logistics*, 320 S.W.3d at 408; *see In re Arthur Andersen LLP*, 121 S.W.3d 471, 486 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding); *see also In re E. Rio Hondo Water Supply Corp.*, No. 13–12–00538–CV, 2012 WL 5377898, at *10 (Tex. App.—Corpus Christi Oct. 29, 2012, orig. proceeding) (same); *Greyhound Lines*, 2014 WL 1022329, at *4 (same).

[12]      *See, e.g.*, *Andersen*, 121 S.W.3d at 484–86.

[13]      *In re Lewis Casing Crews, Inc.*, No. 11–14–00137–CV, 2014 WL 3398170, at *5 (Tex. App.—Eastland July 10, 2014, orig. proceeding); *see also Brokers Logistics, Ltd.*, 320 S.W.3d at 408 (same).

28

multiple parties and issues but not in other cases with less exceptional circumstances. *Compare Andersen*, 121 S.W.3d at 485–86 (holding no adequate remedy by appeal because Andersen might not have another remedy in separate suit against third parties, absence of third parties could profoundly affect suit's outcome in ways not necessarily apparent in appellate record, and there would be enormous waste of resources given case size, expense, and effort to prepare two trials), *with Investment Capital*, 2009 WL 310899, at \*2 (holding appellate remedy adequate when defendant sought to designate employer as responsible third party after trial court had granted summary judgment for employer because circumstances were not extraordinary), *and Wilkerson*, 2008 WL 2777418, at \*1–2 (holding appellate remedy adequate because circumstances of case were not exceptional, denial of defendant's motion was based on failure "to plead sufficient facts, and granting mandamus relief would encourage parties to seek mandamus relief in "all kinds of cases").

The Corpus Christi Court of Appeals likewise has held that an appellate remedy would be inadequate in one case but not in others. *Compare E. Rio Hondo*, 2012 WL 5377898, at \*10 (finding appellate remedy inadequate when erroneous designation of responsible third party could skew trial proceedings, possibly affect result, and compromise presentation of appeal in ways not apparent in appellate record), *with SDI Indus.*, 2009 WL 781562, at \*1 (holding appellate remedy

29

adequate as circumstances presented were not exceptional), *and Scoggins*, 2008 WL 4595202, at \*1 (denying relief due to unexceptional circumstances), *and Helm*, 2007 WL 1584177, at \*1 (same).

The Dallas Court of Appeals has adopted a rule that the improper denial of a motion for leave to designate a responsible third party is generally curable by mandamus. *See In re Smith*, 366 S.W.3d 282, 289 (Tex. App.—Dallas 2012, orig. proceeding) (holding appellate remedy ordinarily inadequate when trial court improperly denies motion to designate responsible third party); *In re Oncor Elec. Delivery Co.*, 355 S.W.3d 304, 306 (Tex. App.—Dallas 2011, orig. proceeding) (holding appellate remedy of denial of motion to designate responsible third parties inadequate because of potential effect on outcome of litigation that might not be apparent in the appellate record); *Greyhound Lines*, 2014 WL 1022329, at \*4 (same).

Plaintiffs rely on a case from our court that held that "a relatively straightforward personal injury case" did not present exceptional circumstances. *See Unitec*, 178 S.W.3d at 64. Despite holding that an appellate remedy would be adequate in *Unitec*, we acknowledged that a future case may present more exceptional circumstances that would justify a holding that an appellate remedy would not be adequate. *See id.* at 65. This is such a case. It is a complicated wrongful death case arising from an explosion of a large boiler at a refinery with

multiple plaintiffs, multiple defendant parent and subsidiary companies, and multiple allegations of tortious conduct by the various companies, with conduct and knowledge of conduct allegedly overlapping between the parties. Plaintiffs seek actual and punitive damages in excess of $1,000,000. *Cf. Lewis Casing Crews*, 2014 WL 3398170, at \*4 (rejecting argument that case was simple, "straightforward negligence matter," in part, because plaintiffs sought damages in excess of $1,000,000). Over 16,000 pages of documents have been produced. Sixteen depositions have been taken; of those, eleven were of Wynnewood employees. And the trial, according to CVR's petition for writ of mandamus, is expected to last "more than two weeks [and] will require at least twenty witnesses."

*Unitec* is distinguishable for a second reason. Unlike *Unitec*, this case presents a novel legal issue: whether, under the 2003 definition of "responsible third party", a defendant is required to designate a co-defendant. Interpreting Subsection 33.004(d) to answer that issue allows us "to give needed and helpful direction to the law that would otherwise prove elusive" and enables us to "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *See Prudential*, 148 S.W.3d at 136. Here, the error is "clear enough, and correction simple enough, that mandamus review [is] appropriate." *See id.* at 137. The issue of interpretation of

31

the current version of Subsection 33.004(d) is one of first impression, presents a question of law, and is likely to recur; thus, it "fits well within the types of issues for which mandamus review is not only appropriate but necessary." *Id.* at 138.

Another factor is the potential difficulty in demonstrating on appeal that the absence of a responsible third party caused harm. *See Hughes*, 2014 WL 4755467, at *13 (noting difficulty in establishing harm from unsubmitted responsible third party); *see also Prudential*, 148 S.W.3d at 138 (if appellant suffers judgment on unfavorable verdict, it could not obtain reversal absent harmful error); *Brokers Logistics*, 320 S.W.3d at 409 (noting same in case involving striking of designation of responsible third party). Wynnewood, as the deceaseds' employer, is inextricably tied to the events and decision-making leading to the on-site explosion. Additionally, post-trial proof that the jury would have attributed responsibility to it, had it been permitted to, might be difficult given how the employer's potential exclusion might affect the relevance and admissibility of such evidence.

We further agree with CVR that the evidence regarding its conduct as the premises owner with respect to the boiler and the procedures and training of personnel at the refinery cannot be readily separated from Wynnewood's conduct, procedures, training, supervision, and responsibility for the same boiler and explosion. These facts further support allowing CVR to designate Wynnewood as a

responsible third party so that its responsibility as the employer may be apportioned together with the responsibility of the premises owner. Plaintiffs' allegations against CVR are intertwined with their allegations against Wynnewood.

Finally, the district court's ruling is not a mere incidental ruling. *See Unitec*, 178 S.W.3d at 65. The denial of CVR's right to allow the jury to determine the proportionate responsibility of all responsible parties is a significant ruling and mandamus review will prevent the impairment or loss of this substantive right. *See Prudential*, 148 S.W.3d at 136.

Accordingly, after balancing the jurisprudential considerations, we conclude that the benefits of mandamus review in this case outweigh the detriments and, thus, hold that the appellate remedy under these circumstances is inadequate.

## Conclusion

We hold that the trial court abused its discretion and that CVR has demonstrated that it lacks an adequate remedy by appeal. Therefore, we direct the trial court to vacate its order of October 12, 2015 and to grant CVR's motion for leave to designate Wynnewood as a responsible third party. We are confident the trial court will promptly comply. The writ will issue only if it does not.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.